BELSOME, J.
Concurs with Reasons.
1,1 write separately to address Lafayette’s unprofessional conduct prior to and during trial of this matter. First, the record reflects that counsel for Lafayette failed to advise counsel for Appellees until the day before trial that Lafayette intended to use a cartoon animation from the Times-Picayune website entitled “The Inundation of New Orleans” at trial. Appel-lees objected to the- repeated use of this animation, as they were afforded no opportunity to authenticate the animation or challenge its data or methodology. Additionally, Lafayette’s structural engineering expert, Carroll Stone Kirkpatrick, testified that in his opinion, the animation comported with the theory that a wall of water destroyed Appellees’ home prior to the wind damage. Accordingly, Appellees submit that the animation was not only hearsay, but also a highly prejudicial misrepresentation upon which the jury could have relied as supporting Lafayette’s theory that a wall of water destroyed the Weg-eners’ home before being damaged by hurricane winds.
A review of the trial transcript also evidences that Lafayette did not disclose the identity of a key participant in an inspection of the Wegeners’ home until the trial was already in progress. Not until Mr. Kirkpatrick testified was it revealed that Freeman Risener, a licensed electrical engineer, accompanied Mr. Kirkpatrick during his inspection of Appellees’ home and participated in taking measurements | Pand photographs of the property. Upon learning of Mr. Risener’s existence at that moment, counsel for Appellees objected on the grounds that Mr. Risener had not been identified by Lafayette during the course of discovery[1] and did not appear on any of *939 Lafayette’s witness bsts; consequently, Appellees were denied the opportunity to depose or cross-examine Mr. Risener regarding his participation in the inspection of the Wegeners’ home with Mr. Kirkpatrick.[2]
This writer is troubled by Lafayette’s aforementioned lack of professionalism and candor, which was not addressed by the majority. Although I may have decided the matter differently, I cannot say that the trial court’s denial of Appellees’ motion for new trial was an abuse of discretion. Therefore, I respectfully concur.

. A review of the trial transcript reveals that counsel for Appellees brought to the trial court's attention that neither Mr. Kirkpatrick’s name nor Mr. Risener's name appeared on the inspection reports:
Your Honor, I want to bring several things to the Court’s attention and to have this documented on the record because some of it we have gone on the record with, some of it we haven’t.
One of the major issues that just came up in this witness’s testimony is that there was a technician who accompanied him to the Wegener property on the date of the inspection. That technician not only has not ever been identified, [sic] And I took David Teasedale's, who is the other engineer, deposition. There are two signatures on the report, David Teasedale and Mr. Kirkpatrick. The report consistently says "we”. *939 The Court is now aware that in response to discovery as to who inspected the property, Mr. Teasedale, under sworn discovery responses, was identified. Ms. Gober [Lafayette property claims manager] in her deposition also identified David Teasedale as the individual who inspected the property.
It wasn't until Mr. Teasedale's deposition that we found out it wasn't Mr. Teasedale. Mr. Teasedale never stepped foot on the property, but it was Mr. Kirkpatrick.
Now I'm hearing that there was a third person. And so Judge, whoever took measurements and photographs — and I can represent to the Court that that person should have been identified and made available for deposition.

. At trial, Mr. Kirkpatrick testified that although Mr. Risener was a registered electrical engineer, Mr. Risener did not inspect any electrical system in the Wegeners’ home. Ap-pellees submit that the complete omission of Freeman Risener's name by Lafayette is significant because Lafayette did not remit payment for the electrical system damage to the Wegeners' home; when asked whether he knew whether the Wegeners’ electrical system was damaged, Mr. Kirkpatrick responded, "Well, I would be assured that it was."